UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GERARD JEMEL HOWARD                                 CIVIL ACTION

VERSUS                                              NO. 15-4388

SHERIFF MARLIN N. GUSMAN ET AL.                     SECTION "B" (2)

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff, Gerard Jemel Howard, was a prisoner

incarcerated in the new Orleans Parish Prison facility ("OPP").[1]  He filed this complaint

pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish

Criminal Sheriff Marlin N. Gusman and two of his ranking deputies, Major Bonita J.

Pittman and Carlos J. Louque.  Howard alleges that while formerly incarcerated in the

old Conchetta facility of OPP for about six months in 2015, he was subjected to

unconstitutional conditions of confinement and received inadequate medical care.  He

seeks compensatory damages and injunctive relief in the form of "a complete physical

to determine if I've suffered or contracted any ailment due to the poor living conditions

at the prison." Record Doc. No. 5 (Complaint at ¶ V).

On November 30, 2015, I conducted a telephone conference in this matter.

Participating were plaintiff pro se and Charlin S. Fisher, counsel for defendants.  Plaintiff

was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179

(5th Cir. 1985), and its progeny.

---

[1]On January 11, 2016, the court received plaintiff's letter advising that he is now incarcerated in the
St. Bernard Parish Prison in Chalmette, Louisiana. Record Doc. No. 19.

## THE RECORD

Plaintiff testified that he was then incarcerated in the new and recently opened OPP facility on a "parole hold" as he awaits possible revocation of his parole stemming from a 1996 conviction on two counts of manslaughter.  He testified that the basis of the parole hold was his arrest on March 8, 2015, and subsequent conviction on drug paraphernalia charges, for which he was sentenced to time served on June 15, 2015.

Howard confirmed that his claims in this case arise from the six-month period of time from the date of his arrest in March until September 2015 during which he was confined in the old Conchetta facility of OPP.  Asked to describe the living conditions about which he complains, Howard testified that "the floors were always dirty; we'd clean it; the showers had mildew; we'd clean it with bleach and everything; of the two toilets, the one at the end was always stopped up."  Plaintiff stated that in response to inmate complaints, deputies provided bleach and other "chemicals" for the inmates to clean the facilities, but they could only put a trash bag over the stopped up toilet to "keep the smell down," while the other toilet had mildew "built up" so that it could only be used to urinate in.  He complained that the bunk beds against the wall also had mildew on them.

Howard testified that these conditions caused "a rash on my head" and athlete's feet, for which he filled out a "sick call" and gave it to a nurse.  He complained that rather than send him to a doctor, the nurse merely examined his conditions and told him

2

to use medicated shampoo for the head rash, which he was expected to purchase from the jail commissary rather than have it provided by jail officials.

Howard singled out a particular event on June 25, 2015, when black smoke was coming from the ventilation system.  He said that when the inmates complained, a ranking sergeant arrived on the scene "with two fire marshals" and at first falsely accused the inmates of smoking in the jail. Howard said he provided inmates with a fan to improve air circulation but refused to leave "hatches" open to give them more fresh air.

Plaintiff acknowledged that his dorm area in Conchetta had five toilets for the inmates to use, only two of which had the poor conditions he described.  He said that when jail personnel responded to their complaints about the single stopped up toilet, they came to the area but did nothing, so the inmates simply covered it with a plastic bag.  He said deputies who came to the tier always noticed the "stink" from this toilet.  Howard complained that the bleach and other chemical supplies that were provided to the inmates for cleaning "didn't work," and the conditions worsened during his stay there, despite the cleaning.  He did not know the exact identity of the chemicals that were provided to the inmates for cleaning "at least three times a week."  He said the cleaning chemicals were distributed by pouring the liquid into a cup before giving it to the inmates to use in their efforts to clean the showers and other areas of the dorm.  "Like I said, . . . we'd bring it to their attention, . . . and they'd bring it to us."  He said despite the cleaning efforts, the

3

mildew could not be eliminated and seemed to spread.  He testified that some inmates developed staph infections as a result of the conditions.

Howard stated that he had received and reviewed the medical records I ordered the sheriff to produce and that they are accurate, Record Doc. Nos. 9, 18, except that some of the complaints he made were not reflected.  He complained that the nurses would examine his scalp and athlete's feet and tell him he needed to use medicated soaps and shampoos that were available for purchase in the jail commissary, but "I'm indigent," so he could not buy them at the commissary.

Plaintiff acknowledged the notation in his medical records that he had received medication for pain he suffered from prior gunshot wounds.  He also acknowledged that he was taken for a visit to a "chronic care" unit before he was transferred from Conchetta to the new jail and that he was provided with an antifungal "itch cream," which he described as a hydrocortisone medication, but he complained that no medicated shampoo for his scalp breakout was provided to him.  He also complained that although the nurses who saw him about his skin problems would examine him and advise how to address them, they would not send him to see the doctor in response to his requests.  He testified that most his scalp and athlete's feet problems had cleared up since his transfer to the new jail, but not entirely, and he was continuing to be told to obtain medicated shampoo from the commissary.  He confirmed that sometimes when his medications were passed out by jail personnel in the mornings he would not get out of bed to receive it "because

4

I was too tired to get up," which was sometimes marked on his medical records as a "refusal" of the medication.

Howard stated that he continues to have problems with his scalp and athlete's feet. He said other inmates sometimes permit him to use their medicated soap or antifungal commissary items. He said his breathing problems had cleared up since the smoke incident in the ventilation unit. He said the smoke problem occurred twice, once in June and once in August, and the resulting smell, like burning plastic, had lingered for several days.

On cross-examination, Howard testified that he notified prison officials of his complaints through the ordinary grievance process, but not to the named defendants personally. He acknowledged that he had no personal contact with Sheriff Gusman or the two named majors about his problems.

## ANALYSIS

### I.  STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013

WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at

6

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995);

<u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a cognizable claim of violation of his constitutional rights under the broadest reading.[2]

---

[2]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.     CONDITIONS OF CONFINEMENT

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his incarceration in OPP.  Howard was a pretrial detainee at all times that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  McCarty v. Zapata County, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636 (5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999). In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive

9

misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), applies. <u>Olabisiomotosho</u>, 185 F.3d at 526; <u>Tamez v. Manthey</u>, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Howard's allegations do not rise to the level of violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." <u>Alexander v. Tippah County</u>, 351 F.3d 626, 630 (5th Cir. 2003) (quoting <u>Woods v. Edwards</u>, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. <u>Farmer</u>, 511 U.S. at 847. A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn

that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>." <u>Id.</u>

at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference'
> is a <u>stringent</u> standard of fault, requiring proof at a municipal actor
> disregarded a known or obvious consequence of his action." . . .   The
> "deliberate indifference" standard permits courts to separate omissions that
> amount to an intentional choice from those that are merely unintentionally
> negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of</u>

<u>County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted))

(emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511

U.S. at 838-40).

Howard's written allegations and testimony meet neither of these two

requirements. The conditions described by plaintiff, while plainly not comfortable or

pleasant, do not rise to a level of seriousness constituting a constitutional violation.

Howard conceded in his testimony that the only physical injury or illness he has suffered

as a result of the allegedly unsanitary conditions was a head rash and athlete's foot, both

common and minor ailments found even among the non-incarcerated population.  Thus,

he alleges no serious harm or risk of serious harm in the constitutional sense, and the

court can perceive none under the circumstances described in plaintiff's testimony and

written submissions.

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008). Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations. Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Howard's allegations about mold, mildew and dirty conditions fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138

F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

In addition, Howard's testimony establishes that prison officials were not deliberately indifferent to the conditions. They responded to the smoke incidents by bringing fire marshal officials to inspect and then addressed the problem. They frequently provided the inmates with cleaning materials to address the need to clean the inmate quarters. As the Fifth Circuit recently held in Brauner v. Coody, No. 12-314, 2015 WL 4393788, at *4-5 (M.D. La. July 17, 2015) (Africk, J.), no constitutional violation occurs when showers are cleaned twice a day with bleach, and the prisoner was provided a disinfectant spray bottle for his personal use. The court specifically noted that failure of prison officials to maintain germ-free showers is not cruel and unusual punishment.

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook,

376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'"  <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)).  The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Howard to which he was exposed do <u>not</u> rise to the level of a constitutional violation.  The conditions he experienced in OPP were neither virtually permanent nor an <u>extreme</u> deprivation of the type that might offend the Constitution, and he suffered no <u>serious</u> physical injuries or serious ailments as a result of any allegedly unsanitary conditions.

14

As to his allegation that the dirty conditions caused him to suffer a rash and athlete's foot, about which he testified, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993) (emphasis added); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994). Generally, this standard for a constitutional violation requires that plaintiff must establish "a life-long handicap or permanent loss." See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health). Howard's athlete's feet and scalp irritations were minor and common ailments that resulted in no such permanent loss. Therefore, they did not rise to the level of serious medical needs for constitutional purposes.

III.  MEDICAL CARE

Howard was a pretrial detainee during the time period about which he complains. Before the Fifth Circuit's decision in Hare, 74 F.3d 633, it appeared that prison officials

must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

As noted above, in Hare, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

16

to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the

deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added). As noted above,

> The Supreme Court has recently reaffirmed that "'deliberate indifference'
> is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." . . .  The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue.  See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference" standard applies and Howard must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions plaintiff described, consisting of a scalp rash and athlete's foot, presented serious medical needs that posed a substantial risk of harm in his particular circumstances.  As discussed above, Howard did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious

medical need for constitutional purposes.  See <u>Hill</u>, 40 F.3d at 1188; (citing <u>Monmouth</u>, 834 F.2d at 347 ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); <u>see also</u> <u>Jackson v. Douglas</u>, 270 Fed. Appx. 462, 2008 WL 748652, at *1 (8th Cir. 2008) (boils on plaintiff's arm and chest not an objectively serious medical need); <u>Stepnay v. Goff</u>, 164 Fed. Appx. 767, 2006 WL 182059, at *2 (10th Cir. 2006) (Inmate with staph infection "may not avoid dismissal . . . by merely asserting conclusory allegations that his condition obviously required a doctor's attention because most skin conditions are not intuitively serious."); <u>Tasby v. Cain</u>, 86 Fed. Appx. 745, 2004 WL 243433, at *1 (5th Cir. 2004) (Plaintiff's assertion that he developed a rash from being placed in restraints "does not establish that he suffered 'serious harm.'"); <u>Gonzalez-Reyna v. Ellis</u>, No. 1:09cv522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation.").

> To be actionable, the detention officers' conduct must demonstrate subjective awareness of a substantial risk of serious harm and a failure to take reasonable measures to abate this risk.  The "deliberate indifference" standard, however, is not an obligation for government officials to comply with an optimal standard of care.  Rather, it is an obligation not to disregard any substantial health risk about which government officials are actually aware.  Under <u>Gobert v. Caldwell</u>, 463 F.3d 339, 345 n.12 (5th Cir. 2006), "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Disagreements with diagnostic measures

are insufficient to give rise to a claim of deliberate indifference to medical needs.

Kitchen v. Dallas Cnty., 759 F.3d 468, 482 (5th Cir. 2014) (footnotes and additional citations and quotations omitted).

Even assuming, however, without concluding that plaintiff's condition presented a serious medical need for constitutional purposes, Howard has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP. Howard testified that he was examined and treated by nurses at the jail and that he received medication on those occasions when he was not "too tired" to get out of bed to receive it.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., LaBorde v. Lowe, 471 F. App'x 390, 391 (5th Cir. 2012) (no deliberate indifference to serious medical needs when inmate "received extensive medical care and numerous prescription medications" for his high blood pressure and any other condition for which he requested treatment); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries

healed); <u>Johnson v. City of Centreville</u>, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing <u>Raspberry</u>, 281 F.3d at 1279; <u>Turk v. Thomas</u>, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when second plaintiff was seen at hospital and discharged after receiving treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); <u>Valenzuela v. Smith</u>, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), <u>report & recommendation adopted</u>, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), <u>aff'd</u>, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Howard has expressed dissatisfaction with the overall speed and quality of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record.

Contentions like Howard's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999)

Insofar as Howard complains that medicated soap and shampoo available for his purchase from the prison commissary should have been provided to him free of charge, he has failed to make allegations sufficient to establish that his constitutional rights were violated in this regard. He does not allege that he was deprived of these items at no cost to him as punishment. Under these circumstances, it cannot be said that the actions of jail officials alleged in the complaint are without penological justification. Prison officials may constitutionally charge inmates for certain kinds of goods and services while incarcerated. See Morris v. Livingston, 739 F.3d 740, 750-52 (5th Cir.), cert. denied, 134 S. Ct. 2734 (2014) (inmates permissibly charged for medical services while incarcerated; budgetary control is a legitimate penological interest) (citing Myers v. Klevenhagen, 97 F.3d 91 (5th Cir. 1996)); Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 246, 253 (4th Cir. 2005) (jail's policy of charging pretrial detainee one dollar per day to help defray his housing cost is not punishment and jail "has a legitimate interest in attempting to defray the costs of a prisoner's keep."). Thus, the fact that defendants

would provide plaintiff with these items only if he purchased them at the jail commissary does not violate the Constitution under these circumstances.

Plaintiff's complaint in this case about his medical care for his rash and athlete's foot fails to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish deliberate indifference under the applicable constitutional standard. For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[3]

        New Orleans, Louisiana, this _____22nd_____ day of January, 2016.

                                                   _____

                                                JOSEPH C. WILKINSON, JR.
                                    UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.